**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA**

---

FRED BERGMAN HEALTHCARE PTY LTD. and
SIMAVITA (AUST) PTY LTD.,

                    Plaintiffs,

      v.

SENECA SENSE TECHNOLOGIES INC.

                   Defendant.

C.A. No. _____

JURY TRIAL DEMANDED

---

**COMPLAINT**

Plaintiffs Fred Bergman Healthcare Pty Ltd. ("Bergman" or "Plaintiff") and Simavita (Aust) Pty Ltd. ("Simavita" or "Plaintiff") (collectively, "Plaintiffs") hereby file this complaint against Defendant Seneca Sense Technologies Inc. ("Seneca Sense" or "Defendant"), and in support thereof, allege and aver as follows:

**THE PARTIES**

1.      Bergman is an Australian proprietary limited company with a registered office at Level 2, 54 Miller Street, North Sydney NSW 2060, Australia.  Bergman and Simavita are wholly owned subsidiaries of Simavita Limited.

2.      Simavita is an Australian proprietary limited company with its principal place of business at Suite 2.02, Level 2, 54 Miller Street, North Sydney NSW 2060, Australia.

3.      On information and belief, Seneca Sense is a corporation organized under the laws of Quebec, Canada, having its principal place of business at 2207 Rue Fullum, Montreal CA-QC Quebec H2K 3PI CA, and doing its business through its U.S. Agent, David Lennarz of Registrar Corp ("Registrar Corp"), at 144 Research Drive, Hampton, VA 23666.

4.     On information and belief, Robert Tarasofsky ("Mr. Tarasofsky") is a director of Seneca Sense.

5.     On information and belief, Mr. Tarasofsky is President and Secretary of 7679149 Canada, Inc. ("7679149 Canada"), a corporation organized under the laws of Quebec, Canada, having its principal place of business at 1-4700 Rue Dagenais, Montreal CA-QC Quebec H4C1L7 CA.

6.     On information and belief, Mr. Tarasofsky is a Canadian citizen domiciled at 469 Argyle Avenue, Westmount QC H3Y 3B3, Canada.

## NATURE OF THE ACTION

7.     This is a civil action arising, in part, under the patent laws of the United States, 35 U.S.C. § 1 et seq., including 35 U.S.C. § 271, based on Seneca Sense's infringement of U.S. Patent No. 7,977,529 ("the '529 Patent" or "Patent-in-Suit") (Exhibit A) by virtue of its making, using, selling, offering for sale, and/or importing of Seneca Sense's WeSense Technology into the United States.

## JURISDICTION AND VENUE

8.     This Court has subject matter jurisdiction over Counts I and II pursuant to 28 U.S.C. §§ 1331 and 1338(a) because the claims arise under the patent laws of the United States, 35 U.S.C. § 1 et seq., including 35 U.S.C. § 271.

9.     This Court has personal jurisdiction over Seneca Sense pursuant to Fed. R. Civ. P. 4(k)(2) because (1) Plaintiffs' claims arise under federal law; (2) Seneca Sense is a foreign corporation; and (3) Seneca Sense has sufficient contacts with the United States.  Seneca Sense has filed an Establishment Registration & Device Listing with the U.S. Food and Drug Administration ("FDA") and a Specific Absorption Report ("SAR") with the Federal Communications Commission ("FCC"), and continues to conduct business directly or through its

subsidiaries, agents, and alter egos, including Registrar Corp., and thereby has purposefully availed itself to the benefits and protections of the laws of the Commonwealth of Virginia and the District Court for the Eastern District of Virginia.  As such, Seneca Sense has sufficient minimum contacts with the forum state such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.

10.     Venue is proper in this district under 28 U.S.C. §§ 1391(b) and 1400(b).

11.     The accused infringing product is Seneca Sense's WeSense Technology, which includes, but is not limited to, the WeSense Wetness and Motion Detection System and the WeSense Pod and Sensor ("WeSense Technology").

12.     On information and belief, Seneca Sense has conducted trials and pilots of its WeSense Technology in the United States and has offered its WeSense Technology for sale in the United States.

**FACTUAL BACKGROUND**

**The Chronology of Events Leading to Infringement**

13.     Simavita (formerly known as Simavita Pty Ltd.) is a medical technology company that has, together with its related entities, been innovating for more than a decade on smart, wearable, and disposable platform technologies for the health care market.   Plaintiffs' Smart Incontinence Management (SIM™) technology replaces traditional, manual methods for incontinence assessments with a unique automated system that helps facilities create customized care plans, which can help improve the management of incontinence, reduce falls, UTIs, and skin events while increasing quality of life and dignity for the aged.

14.     Plaintiffs have developed new smart products for all segments of the incontinence market, including: 1) SIM™ ASSESS, an  incontinence assessment system that collects and analyzes information about a user's continence status and includes i) a smart diaper with integrated

technology that allows for the detection of incontinence events during assessments ii) a reusable wireless data logging device SIM™ pod, iii) a smart tablet device; and iv) associated monitoring and planning  software; and 2) SMARTZ™, a smart incontinence solution for day-to-day use, which delivers a host of wellness and wellbeing indicators, including wetness, ambient temperature, pressure sore management, and falls.

15.     Although it was only recently that Plaintiffs learned of Seneca Sense's infringement of the '529 Patent, the relationship among Simavita, 7679149 Canada, Mr. Tarasofsky, and Seneca Sense started long ago.

16.     Simavita first entered into an agreement with 7679149 Canada in May of 2011. The contract was an introducer agreement whereby 7679149 Canada and Mr. Tarasofsky, as President of 7679149 Canada, agreed to introduce prospective clients to Simavita for the purpose of commercializing Simavita's SIM™ diaper system in Canada, Japan, and the United States, hereafter referred to as the "2011 Introducer Agreement."  Mr. Tarasofsky was identified as a "key person" under the 2011 Introducer Agreement.

17.     Article 6.1 of the 2011 Introducer Agreement provides:

> The Introducer acknowledges that Simavita is the licensee of, or the proprietor and rightful owner of the Intellectual Property and will not use any of the Intellectual Property for any purpose other than which is intended by the terms of this Agreement or as otherwise may be authorized in writing by Simavita.

18.     Article 6.1 survived termination of the 2011 Introducer Agreement.

19.     In 2012, Simavita and 7679149 Canada entered into a second introducer agreement. Simavita US, Inc. (a former related entity of Simavita) and 7679149 Canada entered into a consultancy agreement that sets forth 7679149 Canada and Mr. Tarasofsky's obligations, which included providing services, such as management and/or liaison services with a large prospective

4

US customer, Medline Industries, LP ("Medline"), as well as project management, conducting research, involvement in the evaluation of reference sites, and information gathering.

20.     In October 2012, Simavita entered into a distribution agreement with Medline, whereby Medline agreed to distribute Simavita's SIM™ ASSESS system to customers in the United States.

21.     In 2013, Simavita obtained a 510(k) Premarket Notification for its SIM™ ASSESS system from the FDA:



*See* Simavita's 510(k) Premarket Notification (*available at* https://www.accessdata.fda.gov/scripts/cdrh/cfdocs/cfpmn/pmn.cfm?ID=K130951).

22.     From there, the relationship between Simavita and Mr. Tarasofsky grew and Mr. Tarasofsky and 7679149 Canada gained access to more and more of Simavita's confidential information, such as key clients and its intellectual property.  On January 1, 2014, Simavita and 7679149 Canada entered into a Services Agreement that gave Mr. Tarasofsky and his company additional insight into Simavita's technology and business operations.

23.    Conveniently, not long after Mr. Tarasofsky's and Simavita's relationship terminated, Seneca Sense started conducting trials and pilots of its competing WeSense Technology:



*See* SENECA SENSE, https://www.senecasense.com/.

24.    On information and belief, at least some of Seneca Sense's trials and pilots of WeSense Technology may have occurred in the United States.

25.    In support of that belief, Plaintiffs present a series of intellectual property and regulatory filings that Seneca Sense filed in the United States.  First, on May 31, 2018,  Seneca Sense filed trademark registrations for both "Seneca Sense Technologies" and "We Sense."  The goods and services identified in these trademark filings include "sensors for measuring wetness" and "sensors for measuring wetness, namely, wearable liquid sensors for incontinence . . . .":



"*Seneca Sense Technologies*," TRADEMARK ELECTRONIC SEARCH SYSTEM (TESS), https://www.uspto.gov/trademarks/search (Exhibit B).



"*We Sense*," TRADEMARK ELECTRONIC SEARCH SYSTEM (TESS), https://www.uspto.gov/trademarks/search (Exhibit C).

26.     On October 11, 2018, Seneca Sense continued to avail itself in the United States, and, specifically, the Commonwealth of Virginia, when Seneca Sense applied for registration from the FDA for its "WeSense Wetness and Motion Detection System":



*See* Seneca Sense's FDA Application (*available at* https://www.accessdata.fda.gov/scripts/cdrh/cfdocs/cfRL/rl.cfm?lid=588118&lpcd=KPN; https://fda.report/Company/Seneca-Sense-Technologies-Inc).

27.     In its FDA application for registration and device listing, Seneca Sense listed David Lennarz of Registrar Corp. as its United States agent.  *Seneca Sense Technologies Inc. FDA Filings*,  FDA.REPORT,  https://fda.report/Company/Seneca-Sense-Technologies-Inc.     Registrar Corp. assists businesses with U.S. FDA compliance issues for food products, medical devices, and drugs.  *Registrar Corp.*, https://www.registrarcorp.com.  Registrar Corp. has a principal place of business at 144 Research Drive, Hampton, Virginia 23666 USA.

28.     Finally, in November 2019, Seneca Sense filed an application for equipment authorization with the FCC because its WeSense Technology System wirelessly communicates with a phone or tablet:



*See* Seneca Sense's FCC Application (*available at* https://fccid.io/2AUYMWSP3-1).

29.     Seneca Sense authorized Bay Area Compliance Laboratory Corporation to act on its behalf in all matters related to the FCC application for equipment authorization, stating in its application "[a]ll acts carried out by Bay Area Compliance Laboratory Corporation on our behalf shall have the same effect as our own action." *Letter POA* in Seneca Sense's FCC Application

(*available at* https://fccid.io/document.php?id=4516130).   Bay Area Compliance Laboratory Corporation has a principal place of business at 1274 Anvilwood Ave., Sunnyvale, California 94089 USA.

30.    Seneca Sense submitted a User Manual and photos of its WeSense Technology to the FCC in support of its authorization application.  Included among the documents are test photos of a pod and user interface.  However, these items are not branded with WeSense or Seneca Sense trademarks.  Instead, they are branded with Medline's FitRight Connect trademark:



*See* Seneca Sense's FCC Application (*available at* https://fccid.io/2AUYMWSP3-1).

31.    Medline is the owner of U.S. Trademark 8837618 "FITRIGHT CONNECT" for goods and services including incontinence briefs and sensors for detecting wetness in incontinence products:



"*Fitright    Connect*," TRADEMARK    ELECTRONIC    SEARCH    SYSTEM    (TESS),
https://www.uspto.gov/trademarks/search (Exhibit D).

32.    FitRight is a Medline brand of products that include at least guards for men,
underwear, liners, and briefs for the adult incontinence market space:



*FitRight Ultra Adult Incontinence Underwear*, MEDLINE,

https://www.medline.com/product/FitRight-Ultra-Adult-Incontinence-Underwear/Absorbent-Underwear/Z05-PF62819?question=fitright.

33.    The relationship between Seneca Sense and Medline is even more obvious in Seneca Sense's user interface photos.  The tests and pilots in the photos, dated October 2019, are specifically named "Medline Test" and the FitRight application in Apple's app store is listed as developed by Seneca Sense:



*See* Seneca Sense's FCC Application (*available at* https://fccid.io/2AUYMWSP3-1).



*See Connect by FitRight by Seneca Sense Technologies Inc.*, APPLE STORE PREVIEW, https://apps.apple.com/us/app/connect-by-fitright/id1581860467.

34.     On information and belief, Medline appears to be a customer of WeSense as of at least 2019.

35.     In further support of Seneca Sense's activity in the United States, Seneca Sense hired an "Executive Vice President of Sales" located in Chicago, IL who "[j]oined Seneca Sense Technologies Inc. to support commercialization of WE SENSE™ in the United States."



*Mitch Odahowski*, LINKEDIN, https://www.linkedin.com/in/mitchodahowski/.

### The Patent-in-Suit

36.    The '529 Patent, titled "Incontinence Management System and Diaper," was issued by the United States Patent and Trademark Office ("USPTO") on July 12, 2011.  Bergman is the lawful owner by assignment of the '529 Patent.  Through a Technology License between Bergman and Simavita, Simavita is an exclusive licensee of the '529 Patent, including the right to sue for patent infringement and damages, including past damages.

### The Technology of the Patent-in-Suit

37.    The technology of the '529 Patent is a unique incontinence management system and sensor design, including a "smart" incontinence pad or diaper which delivers a host of wellness and well-being indicators including, but not limited to, wetness, ambient temperature, pressure sore management, falls, and many other features and information.  The technology empowers caretakers with improved information and avoids unnecessary manual checking, which allows more time to spend on personalized care of residents and patients.

13

38.     A sensing material is applied to or embedded into the diaper or incontinence product.  This material most typically is on or near an outer surface of the diaper, is non-invasive, and is fully safe for skin contact.  The pod gathers data from the pad sensor and it is securely encrypted and relayed wirelessly to a software application, where it can be viewed or transmitted onto a centralized system.

39.     The wearers' status can be monitored via a dashboard of health and wellness metrics on an app or the data can be transmitted to existing resident monitoring and call systems, enabling the information to be displayed in one place.

**<u>Simavita's Smart Incontinence Pad or Diaper Product</u>**

40.     Simavita is an international supplier of smart incontinence management systems, including smart incontinence pads and diaper products.

41.     Since about 2013, Medline has sold Plaintiffs' SIM™ ASSESS system to customers in the United States, pursuant to its distributorship agreement with Simavita.

42.     Plaintiffs' technology platform represents a clear unmet market need to provide low cost product to the growing US$11bn market for adult incontinence pads (and the US$53bn diaper market for infants).  Plaintiffs' innovation disrupted both markets, where there has been a lack of disruptive innovation for over two decades.

43.     Plaintiffs' technology incorporates sensors to measure fluid in a diaper, movement, temperature, and additional data to provide wellness data and warnings (important wellness indicators including pressure sore risks and falls) and this functionality will expand with product development.

## Seneca Sense's Infringing Product

44.     Seneca Sense is a Canadian company claiming to specialize in wearable technology.   Specifically, Seneca Sense is in the adult brief sensing market aimed towards managing issues related to incontinence.

45.     On information and belief, Seneca Sense currently offers one system:   WeSense Technology.

46.     WeSense Technology includes several components, including the WeSense Pod, WeSense printed sensor (either as an insert to add to an adult diaper, or as embedded sensor technology at the time of diaper manufacture), a commercially available incontinence product, and WeSense software application for a phone or tablet.

47.     The WeSense Pod is a substantial component of WeSense Technology.

48.     The WeSense Pod is especially made or especially adapted for use in WeSense Technology and is not a staple article or commodity of commerce suitable for substantial other uses.

49.     WeSense Technology infringes at least claim 1 of the '529 Patent, which recites as follows:

> 1. A moisture monitoring system for monitoring wetness in one or more absorbent articles, the system including:
>
> an input for receiving one or more sensor signals indicative of a presence of wetness in an absorbent article;
>
> a processor; and
>
> user interface for communicating with a user of the system;
>
> wherein the processor executes an algorithm to analyze the one or more sensor signals by applying the one or more received sensor signals to a pre-determined mathematical model to characterize a wetness event in an absorbent article; and

wherein the system has devised the pre-determined mathematical model using sensor signal data previously received by the system, the mathematical model representing a relationship between one or more variables obtainable from the received sensor signals and a characteristic used to characterize a wetness event.

50.     As required by Claim 1 of the '529 Patent, WeSense Technology is "[a] moisture monitoring system for monitoring wetness in one or more absorbent articles."



*See, e.g.*, *What is WeSense?*, Seneca Sense, https://www.senecasense.com/what-is-wesense/.

51.     WeSense Technology is a system including "an input for receiving one or more sensor signals indicative of a presence of wetness in an absorbent article."





*Id.*

52.    WeSense Technology is a system including "a processor."   For example, the processor can be a phone, computer, tablet, or existing hospital monitoring system capable of downloading the WeSense or FitRight Applications:



*Id.*

53.    The WeSense Pod also includes a processor:



*See* Seneca Sense's FCC Application (*available at* https://fccid.io/2AUYMWSP3-1).

54.    WeSense Technology is a system including a "user interface for communicating with a user of the system."



*Id.*

55.    WeSense Technology is a system "wherein the processor executes an algorithm to analyze the one or more sensor signals by applying the one or more received sensor signals to a pre-determined mathematical model to characterize a wetness event in an absorbent article."



*Id.*

56.    WeSense Technology is a system "wherein the system has devised the pre-determined mathematical model using sensor signal data previously received by the system, the mathematical model representing a relationship between one or more variables obtainable from the received sensor signals and a characteristic used to characterize a wetness event."  Among the information provided on the user interface of the WeSense Technology are green, yellow, and red

indicators reflecting the status and capacity of the brief on the wearer.  This type of functionality evidences the presence of a mathematical model against which the sensors are calibrated.



*What is WeSense?*, Seneca Sense, https://www.senecasense.com/what-is-wesense/.

57.     WeSense Technology has a WeSense Pod designed to connect to a WeSense sensor once it is placed in an incontinence brief:



*See* Seneca Sense's FCC Application (*available at* https://fccid.io/2AUYMWSP3-1).

58.     The WeSense Pod connects to the WeSense printed sensor to send a signal over Wi-Fi, Bluetooth, radio, or an analogous means of wireless communication to the smart application on a phone or tablet.  The application "WeSense" is downloadable in the United States based Apple App Store:



*See WeSense by Seneca Sense Technologies Inc.*, Apple Store Preview, https://apps.apple.com/us/app/wesense/id1582524117.

59.    WeSense Technology is designed to detect wetness in the brief to help reduce the time users wear a wet brief:

## How it works

WeSense™ will detect wetness events in real time and will alert when the brief is close to usable capacity. This way, caregivers will change residents at the appropriate time! Caregivers can rely on accurate data to change residents when alerted. **Not too soon, not too late but at the right time!**

WeSense™ provides usage patterns and analysis in order to help plan your staff's workload and help in choosing the most suitable incontinence product for each resident. As a result your staff members will never have to physically check a resident's incontinence product for saturation ever again while using WeSense™.*

*See What is WeSense?*, Seneca Sense, https://www.senecasense.com/what-is-wesense/.

## COUNT I:

### Infringement of the '529 Patent by Seneca Sense Pursuant to 35 U.S.C. § 271(a)

60.     Plaintiffs incorporate by reference the allegations in Paragraphs 1 through 59 above.

61.     The '529 Patent is directed to an "incontinence management system for monitoring wetness in one or more absorbent articles." (Exhibit A at Abstract).

62.     As set forth in Paragraphs 44-59 and pursuant to 35 U.S.C. § 271(a), after conducting a reasonable investigation, Seneca Sense has infringed at least Claim 1 of the '529 Patent, either literally or under the doctrine of equivalents, by making, using, selling, offering for sale, and/or importing WeSense Technology in and/or from the United States.

63.     On information and belief, Seneca Sense has conducted trials and/or pilots of its infringing WeSense Technology in the United States:



*See* SENECA SENSE, https://www.senecasense.com/.

64.     On information and belief, Seneca Sense has offered its WeSense Technology for sale in the United States.

65.     In light of the foregoing, Seneca Sense has infringed the '529 Patent in violation of at least 35 U.S.C. § 271(a).

66.     Plaintiffs have been damaged as a result of Seneca Sense's past use and/or offering for sale of WeSense Technology in the United States.

67.     Plaintiffs are being damaged as a result of Seneca Sense's current use, manufacture, import, sale, and/or offer for sale of WeSense Technology in the United States.

68.     Plaintiffs will be damaged as a result of Seneca Sense's future use, manufacture, import, sale, and/or offer for sale of WeSense Technology in the United States.

69.     Thus, Seneca Sense is liable to Plaintiffs in an amount that compensates it for such infringement, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

70.     On information and belief, Seneca Sense has acted with full knowledge of the '529 Patent and without a reasonable basis for believing that it was not or would not be liable for infringing the '529 Patent.  On further information and belief, Seneca Sense's infringement has been willful under 35 U.S.C. § 284.

71.     Seneca Sense's infringement of the '529 Patent will result in loss of market share for Plaintiffs' products.

72.     Seneca Sense's infringement of the '529 Patent has and will disrupt Plaintiffs' customer relationships and contracts.  Such disruption has and will result in the formation of customer relationships between Seneca Sense and Plaintiffs' existing customers, the adverse effects of which cannot be adequately compensated by money damages.

73.     The injury to Plaintiffs in light of the foregoing cannot be adequately compensated by money damages, and is irreparable.

**COUNT II:**

**Infringement of the '529 Patent by Seneca Sense Pursuant to 35 U.S.C. § 271(b)–(c)**

74.     Plaintiffs incorporate by reference the allegations in Paragraphs 1 through 73 above.

75.     On information and belief, after conducting a reasonable investigation, Seneca Sense has and is actively, knowingly, and intentionally aiding and abetting and inducing infringement of the '529 Patent in violation of 35 U.S.C. § 271(b) by non-parties, including customers and end-users, despite Seneca Sense's knowledge of the '529 Patent.

76.     On information and belief, Seneca Sense has taken and continues to take active steps to encourage and induce customers to infringe the '529 Patent by developing and offering a FitRight branded smart diaper system that utilizes Seneca Sense's WeSense Technology.

77.     On information and belief, Seneca Sense has actual knowledge of, or at a minimum was willfully blind to, the fact that customers and end-users of its WeSense Technology have infringed, and will continue to infringe, at least one claim of the '529 Patent.

78.     On information and belief, Seneca Sense is contributing to the infringement of the '529 Patent in violation of 35 U.S.C. § 271(c) by using, offering to sell, or selling within the United

States or importing into the United States components of the patented invention set forth in at least claim 1 of the '529 patent.  The components constitute a material part of the invention claimed in the '529 patent.  Seneca Sense knows that such components are especially made or especially adapted for use by customers and end-users in an infringement of at least claim 1 of the '529 Patent.  The components are not a staple article or commodity of commerce suitable for substantial non-infringing use.

79.     By reason of Seneca Sense's infringing activities, Plaintiffs have suffered, and will continue to suffer, substantial damages in an amount to be proven at trial.

80.     Seneca Sense's acts complained of herein have damaged and will continue to damage Plaintiffs irreparably.

81.     Seneca Sense is not licensed or otherwise authorized to make, use, import, sell, or offer to sell any Smart Incontinence Pad, software application, sensor pod, or Diaper Product claimed in the '529 Patent, and Seneca Sense's conduct is, in every instance, without Plaintiffs' consent.

82.     On information and belief, Seneca Sense's infringement has been and continues to be with full knowledge of the '529 Patent and willful under 35 U.S.C. § 284.

## CONCLUSION AND PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that:

A.     The Court find that the Defendant has infringed the Patent-in-Suit and hold the Defendant liable for such infringement under 35 U.S.C. § 271(a)–(c);

B.     The Court issue an order pursuant to 35 U.S.C. § 284 for monetary damages in an amount no less than a reasonable royalty to adequately compensate Plaintiffs for Defendant's infringement of the Patent-in-Suit;

C.    The Court issue an order pursuant to 35 U.S.C. § 283 permanently enjoining the Defendant, and anyone acting or participating by, through or in concert with the Defendant, from infringing the Patent-in-Suit;

D.    The Court declare that Defendant's infringement has been willful and that this is an exceptional case entitling Plaintiffs to their reasonable attorneys' fees under 35 U.S.C. § 285;

E.    The Court award Plaintiffs their costs and reasonable attorneys' fees; and

F.    The Court award such other relief as the court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a trial by jury on all issues so triable.

Dated: December 9, 2021

K&L GATES LLP

Amy J. Eldridge, Esq. (VSB # 77873)
**K&L Gates LLP**
1601 K Street NW
Washington, DC 20006
Telephone: 202-778-9400
Fax: 202-778-9100
Email: amy.eldridge@klgates.com

Jeffrey R. Gargano (*pro hac vice* forthcoming)
Devon C. Beane (*pro hac vice* forthcoming)
Amanda C. Maxfield (*pro hac vice* forthcoming)
**K&L Gates LLP**
70 West Madison Street, Suite 3300
Chicago, Illinois 60602
Telephone: (312) 372-1121
Fax: (312) 827-8000
Email: jeffrey.gargano@klgates.com
       devon.beane@klgates.com
       amanda.maxfield@klgates.com

*Attorneys for Plaintiffs Fred Bergman Healthcare*
*Pty Ltd. and Simavita (Aust) Pty Ltd.*